## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                    Case No.: 8:24-CV-511

ROBERT J. REMINGTON,
LTJ GROUP V, LLC,
INNOVAK OF FLORIDA, INC.,

     Defendants.

_____/

### COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

The United States of America sues to recover treble damages and civil penalties for violations of the False Claims Act, 31 U.S.C. § 3729-3733 (the "FCA") and alleges:

### INTRODUCTION

1.     As part of our nation's promise to support veterans who honorably served in the United States military after the September 11, 2011, terrorist attacks, Congress passed the Post-9/11 GI Bill, 38 U.S.C. §§ 3301-27 (the "GI Bill"). Eligible veterans and active-duty members may receive tuition assistance, a housing allowance, and a stipend for books and supplies. The Department of Veterans Affairs (the "VA") pays benefits for tuition and fees directly to qualifying schools.

2.     For-profit schools have targeted GI Bill students and exploited the GI Bill's promises by overcharging the Department of Veterans Affairs for educational

1

programs. The defendants here submitted claims for GI Bill money to which they were not entitled (1) by falsely inflating their claims to the VA for computer training courses provided to GI Bill students and (2) by paying unlawful incentive compensation to individuals engaged in recruiting and enrolling GI Bill students.

3.     The longer a person serves in the military, the greater the benefits available under the GI Bill. A minimum of 90 days' aggregate, active-duty service typically warrants 40-percent assistance from the VA. Thirty-six months or more typically results in 100-percent assistance. If a school offers to waive tuition for a student receiving less than 100-percent assistance, that tuition waiver must be reported to the VA and the student's portion reduced accordingly. In other words, a student who receives less than 100-percent assistance must always contribute to the cost of his or her education.

4.     To circumvent this requirement and enroll as many GI Bill veterans as possible, the defendants routinely waived all tuition that the VA would not pay for students receiving less than 100-percent assistance. The result was that the true cost of the defendants' courses was not the catalogue price but was whatever the VA was willing to pay. This caused systematic and massive overcharging of the VA.

5.     To further drive and encourage aggressive recruiting of GI Bill students, the defendants paid unlawful incentive compensation to admission representatives in violation of Title 38. Some of these admission representatives worked exclusively on commissions tied to sales and collections. They and others competed for cash prizes in the form of sales contests and bonuses driven by daily sales quotas. The

defendants knew these payments were unlawful but continued anyway and even tried to conceal the practice by calling commissions a "student completion percentage" without actually changing the compensation structure. When the defendants submitted claims to the VA, the defendants certified that they were complying with Title 38, which was untrue.

6.     The VA would not have paid the defendants GI Bill money if the VA had known that the defendants' claims and certifications were false.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over the subject matter and parties under 28 U.S.C. §§ 1331 and 1345 because this is a civil action by the United States under the FCA and federal common law. Every claim in this action forms part of the same case or controversy.

8.     The Court has personal jurisdiction over the defendants under 31 U.S.C. § 3732(a) because the defendants do business in or have committed acts related to the allegations in this complaint in the Middle District of Florida. Additionally, acts proscribed by 31 U.S.C. § 3729 occurred in this district.

9.     Venue is proper in the Middle District of Florida under 28 U.S.C. §§ 1391(a)-(c), 1395(a), and 31 U.S.C. § 3732(a), because the defendants do business and committed the acts in violation of 31 U.S.C. § 3729 in this district.

10.     The defendants LTJ Group V, LLC, and Innovak of Florida, Inc., agreed to toll the running of the statute of limitations from April 9, 2021, through February 25, 2024. *See* 31 U.S.C. § 3731(b)(1).

## THE PARTIES

11.     The United States sues on behalf of the Department of Veterans Affairs, which regulates the provision of educational assistance benefits under the GI Bill.

12.     The defendant LTJ Group V, LLC, which does business as New Horizons Computer Learning Center of Gulf Coast Florida, is a Florida limited liability company with a principal place of business at 5402 W. Laurel Street, Suite 201, Tampa, Florida, 33607 ("New Horizons Tampa").

13.     The defendant Innovak of Florida, Inc., which does business as New Horizons Computer Learning Center, is a Florida corporation with a principal place of business at 1221 Lee Road, Orlando, Florida 32810 ("New Horizons Orlando").

14.     New Horizons Tampa and New Horizons Orlando (collectively, "New Horizons") each own a franchise license from New Horizons, Inc., to sell and deliver computer training in their respective areas.

15.     Robert J. Remington owns and operates these franchises.

## LEGAL BACKGROUND

### A. The Post-9/11 GI Bill (the "GI Bill")

16.     The GI Bill financially supports service members, veterans, and their eligible dependents who attend an education or training program at an educational institution. This includes both accredited and non-accredited educational institutions, as well as those that grant a degree and those that do not.

17.     A non-accredited educational institution seeking to provide a VA-eligible program must first apply to and receive approval from the State Approving

4

Agency ("SAA") that oversees approval and compliance with federal guidelines. 38 U.S.C. § 3676(a). The SAA is an independent state agency authorized by federal statute and responsible for ensuring the quality and integrity of VA-eligible education and training. 38 U.S.C. § 3671.

18.     A non-accredited educational institution must satisfy the requirements for course approval delineated in 38 U.S.C. § 3676 and 38 C.F.R. § 21.4254.

19.     The institution is also subject to the restrictions in 38 U.S.C. § 3680A(d) and 38 C.F.R. § 21.4201(a), which prohibit approval of a course if more than 85 percent of the students enrolled in the course "are having all or part of their tuition, fees, or other charges paid to or for them by the educational institution or by the Department of Veterans Affairs[.]" This is known as the "85/15 Rule."

20.     The GI Bill pays directly to the school as much as 100 percent of the individual's tuition and fees. An eligible individual who is not an active-duty service member also receives a monthly housing allowance and stipend for books and supplies. 38 U.S.C. §§ 3313(g)(3), (h).

21.     The benefit for an individual who served on active duty, i.e., a veteran, is based on the individual's time in service. 38 U.S.C. § 3311(b), 3313. For example, a veteran who served an aggregate of at least 36 months on active duty would be entitled to a benefit of as much as 100 percent tuition and fees. A veteran who served an aggregate of at least 30 months but less than 36 months on active duty who is not service disabled would be entitled to a benefit of as much as 90 percent tuition and fees. *Id.*

| Aggregate length of creditable active duty service after 09/10/01 | Percentage of maximum amounts payable |
|---|---|
| At least 36 months [1] | 100 |
| At least 30 continuous days (Must be discharged due to service-connected disability) | 100 |
| At least 30 months, but less than 36 months [1] | 90 |
| At least 24 months, but less than 30 months [1] | 80 [3] |
| At least 18 months, but less than 24 months [2] | 70 [3] |
| At least 12 months, but less than 18 months [2] | 60 |
| At least 6 months, but less than 12 months [2] | 50 |
| At least 90 days, but less than 6 months [2] | 40 |

(Authority: 38 U.S.C. 3311, 3313)

*See* 38 C.F.R. § 21.9640.[1]

22.     For tuition and fee payments under the GI Bill, the VA is the payer of last resort. In other words, the VA pays the "actual net cost for in-state tuition" charged by a school after it has applied "any waiver of or reduction in, tuition and fees; and any scholarship, or other Federal, State, institutional or employer-based aid or assistance." 38 U.S.C. § 3313(c)-(g). This is known as the "Last Payer Rule."

23.     The "actual net cost for in-State tuition and fees" in 38 U.S.C. § 3313(g)(3)(A)(i)(I) applies to tuition and fees for any approved non-college degree program offered by any approved educational institution that is not an institution of higher learning, whether public or private, for profit or not-for-profit. The statute authorizes payment to educational institutions for "established charges," 38 U.S.C. § 3313(h), which "means the actual charge for tuition and fees that similarly

---

[1] PL 115-48, effective August 1, 2020, eliminated the 40-percent benefit level. A current rate table can be found at https://www.benefits.va.gov/GIBILL/FGIBSummaries.asp. (Last visited Feb. 26, 2024).

circumstanced nonveterans enrolled in the program of education are required to pay." 38 C.F.R. § 21.9505. Under Section 3313(g)(1), educational benefits are payable for any "approved program of education other than a program of education leading to a degree at an institution other than an institution of higher learning," which applies to institutions like New Horizons. The amount of assistance is the lesser of (1) the actual net cost for in-State tuition and fees after the application of any waiver of, or reduction in, tuition and fees or (2) $17,500 for the academic year beginning on August 1 (as revised by 38 U.S.C. § 3015(h)).

24.    Under the Last Payer Rule, if a veteran eligible to receive 60-percent coverage enrolls in a course costing $100, the school should report to the VA the actual net cost of $100. The VA would then pay $60 to the school, and the veteran would pay $40. If, however, the school reduced tuition by $40, the school should report the actual net cost of $60. The VA would then pay $36 to the school (60 percent of the $60 net cost), and the veteran pays $24 (40 percent of the $60 net cost). In other words, (1) unless the veteran is covered at 100 percent, the veteran will always pay something and (2) if a school waives, reduces, or otherwise declines to collect a portion of a veteran's tuition not covered by the GI Bill, the school must report that to the VA because the VA pays no portion of that tuition.

25.    In addition to the Last Payer Rule, an educational institution must abide certain sales and enrollment practices. Codified in 38 U.S.C. § 3696, the so-

called "Incentive Compensation Ban" (the "ICB")[2] prohibits an educational institution from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . ." *Id.* This became law on January 10, 2013, as part of Public Law 112-249. This followed an April 27, 2012, Executive Order (No. 13607) directing the Departments of Defense, Veterans Affairs, and Education to establish "Principles of Excellence" applicable to all institutions receiving money from military and veteran educational programs, including the GI Bill. Among the required principles is to "end fraudulent and unduly aggressive recruiting techniques . . . as well as . . . payment of incentive compensation . . . consistent with regulations issued by the Department of Education" including 34 C.F.R. § 668.14.

26.     Section 668.14(b)(22)(i) prohibits "any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments . . . to any person or entity who is engaged in any student recruitment or admission activity[.]"

27.     The purpose of the ICB is to disincentivize schools from recruiting as many students as possible "without regard for their dedication, fitness, or ability to afford the educational program." *United States ex rel. Mackillop v. Grand Canyon Educ., Inc.*, 626 F. Supp. 3d 418, 438-39 (D. Mass. Sept. 6, 2022). A commission, bonus, or

---

[2] Some aspects of this statute were substantially amended in 2021. The version effective January 10, 2013, to July 31, 2021, codifies the ICB at Section 3696(d). In the current version, the ICB is located in Section 3696(c).

incentive payment is "a sum of money or something of value other than a fixed salary or wages, paid to or given to a person or entity for services rendered" or "something to motivate improve performance." *Id.* at 438. Small, occasional perks, such as a cup of coffee or a $10 gift card for recruiting a higher number of students, would not violate the ban. *Id.*

28.    During the relevant period, the VA processed reimbursement claims from educational institutions for tuition and fees in VA-ONCE, an internet-based system.[3] An educational institution must designate at least one school certifying official ("SCO") who is authorized to submit claims.

29.    After receiving approval to participate in a VA education benefit program, the educational institution submits a claim for payment to the VA using VA-ONCE. Each claim is an electronic certification that the eligible student is enrolled in a particular program or course of study. The claim also includes the name of the program, the clock hours for that program, the dates of enrollment, and the amount of tuition and fees charged. For example, below is a copy of a VA-ONCE certification submitted by New Horizons Orlando for a residential student:

---

[3] The VA recently switched to a different internet-based program called Enrollment Manager.



Enrollment Certification VA-ONCE ver. P055 - Chapter 33

VA File No.
179640485-

Student Information
████████████
1951 SUMMIT TOWER BLVD
ORLANDO, FL 32810

Type of Training
Nondegree College

Name of Program
MOBILE DEVICE & DESKTOP SUPPORT TECHNICIAN;424;424

Credit for Prior Training
PENDING

| Enroll Begin | Dates End | Revised End Date | Res Hrs | Dist Hrs | R/D Hrs | Clock Hrs | T&F Amt | Yellow Ribbon Amount | Program Out St Chg |
|---|---|---|---|---|---|---|---|---|---|
| 04/02/18 | 04/06/18 | | | | | 36 | $2,125.00 | | |

Remarks
04/02/18-04/06/18: Signed Change of Program/Place on file.

***Student's signed request for Change of Program/Place of Training is on file.***

CERTIFICATION: All Provisions on VA Form 22-1999 Are Certified.

Date Signed      School Information
04/03/2018       EC ████
                 NEW HORIZONS COMPUTER LEARNING CENTER-ORLANDO
                 1221 LEE ROAD
                 ORLANDO, FL 32810
                 Phone # (407)210-4204
                 Facility Code 25463210

Electronically Received by VA: 04/04/2018

VA Form 22-1999
Mar 2009 OMB Control No. 2900-0073

30.     To gain access to VA-ONCE, an approved school signs a memorandum of understanding in which the school certifies that it will "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system is subject to "all duties and liabilities pertaining to educational institutions," including for "all certifications" and "any other provisions of law or regulations that apply."

31.    Each electronic claim for payment submitted by the school is certified and expressly incorporates by reference the certifications in VA Form 22-1999, including that the school (1) "has exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to the VA" and (2) "agrees to report promptly to VA any enrollment change and any change due to unsatisfactory progress, conduct, or attendance." The school further certifies that "All the 85-15 ratio requirements have been satisfied."

32.    After receiving a school's claim through VA-ONCE, the VA processes and pays automatically based on the certifications accompanying the claim.

**B. The False Claims Act**

33.    The FCA provides that any person who individually or in concert with others knowingly presents or causes to be presented a false claim for payment or approval, or makes, uses, or causes to be made or used a false statement that is material to a claim for payment or approval is liable to the United States for penalties and treble damages. 31 U.S.C. § 3729(a)(1)(A)-(C).

34.    Knowingly means that the person (1) had actual knowledge of the information, (2) acted in deliberate ignorance of the truth or falsity of the information, or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). The person need not have acted with specific intent to defraud the United States to be liable under the FCA. *Id.*

35.    A "claim" under the FCA includes "any request or demand, whether

under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A)(i).

## FACTUAL ALLEGATIONS

### A. Courses provided by New Horizons Orlando and New Horizons Tampa.

36.     The defendants provided non-college-degree training programs to veterans and other students in areas such as computer coding and programming, database management, IT infrastructure, and leadership and professional development. These programs were offered in weekly installments and largely occurred in person.

37.     Students attending in-person programs could become "residential" students, meaning they would be provided lodging at hotels in the Tampa or Orlando area near the New Horizons facility.

### B. The VA approved New Horizons Orlando and New Horizons Tampa to enroll Post 9/11 GI Bill students and to certify enrollment through VA-ONCE.

38.     Both New Horizons Tampa and New Horizons Orlando sought and received approval to enroll GI Bill students in their courses.

39.     The VA approved New Horizons Tampa's application to enroll in courses students who receive GI Bill benefits. New Horizons Tampa applied under its trade name New Horizons Computer Learning Centers of the Gulf Coast, to the Florida SAA on or about December 21, 2004. The VA assigned this location a facility code of 25447510. On or around June 18, 2015, New Horizons Tampa

applied for approval of a change in ownership, which the VA approved on October 27, 2015.

40.     On or after September 3, 2003, the VA approved New Horizons Orlando's application to enroll in courses students who receive GI Bill benefits. New Horizons Orlando applied under its trade name New Horizons Computer Learning Center to the Florida SAA on or about June 24, 2003. The VA assigned this location a facility code of 25463210.

**C. New Horizons submitted electronic certifications through VA-ONCE.**

41.     New Horizons Tampa and New Horizons Orlando each signed a VA-ONCE Memorandum of Understanding ("MOU") in which each certified that the school would "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status, even though the provisions of those laws, regulations, or requirements do not appear on the certifications created by the VA-ONCE program" and that the school was "subject to all the duties and liabilities pertaining to educational institutions."

42.     On or about August 3, 2004, New Horizons Orlando General Manager E.H. entered an MOU on behalf of New Horizons Orlando, which was later renewed through the period relevant to this complaint.

43.     New Horizons Tampa entered an MOU, which was later renewed through the period relevant to this complaint. Several individuals served as SCOs for New Horizons and were authorized to submit claims to the VA through VA-ONCE, including the following:

    a.  Chief Operating Officer ("COO") C.W.

    b.  Controller P.S.

    c.  Accountant P.D.

    d.  Tampa Operations/Education Coordinator M.H.

    e.  Orlando Student Services Manager J.R.

44.    Between April 9, 2015, and February 18, 2022, New Horizons submitted hundreds of enrollment certifications through VA-ONCE for GI-Bill students.

45.    On receiving these enrollment certifications through VA-ONCE, the VA paid the defendants for student tuition and fees.

**D. New Horizons knowingly violated the Incentive Compensation Ban ("ICB"), submitted false claims, and made false statements to the VA.**

    **a.  New Horizons paid unlawful incentives for admission representatives to recruit and enroll veterans.**

46.    To facilitate recruitment and enrollment of students at New Horizons, the school hired admission representatives. These individuals used various titles including "career specialist," "account executive," and "educational consultant."

47.    Some admission representatives worked with large businesses to enroll the business's employees. New Horizons identified these as "account executives," "business-to-business," or "B2B" representatives.

48.    Other admission representatives worked to enroll individual students, such as veterans covered by the GI Bill, which representatives New Horizons

identified as "educational consultants," "business-to-consumer," or "B2C" representatives. Some did both.

49.     New Horizons compensated admission representatives through a salary and a commission. Some earned both, while others worked entirely on commission.

50.     Commissions were based on sales, which occurred when a student enrolled in courses at New Horizons, and collections, which occurred when the school received payment. As sales and collections increased, so did an admission representative's commissions.

51.     Admission representatives also earned compensation from sales contests, which were tied to team and individual sales goals dictated by management. The winner was the admission representative who had the most students start a course at New Horizons. New Horizons sometimes incentivized admission representatives to "go full comm" by, for example, limiting sale contests to those working entirely on commission.

52.     Admission representatives were subject to disciplinary probation and termination for failing to achieve sales quotas.

53.     New Horizons used a written "commission plan" with admission representatives, the stated purpose of which was "to fairly compensate Account Executives (AEs)/Educational Consultants (ECs) for their efforts by paying them a percentage of the margin dollar they generate. This is a pay-for-performance plan." New Horizons never informed the VA or the SAA about its commission plan for admission representatives.

54.    In other words, student enrollment drove admission representative compensation.

55.    New Horizons management, including the COO, sent e-mails to the admission representatives detailing the periodic sales contests. For example, e-mails in March, 2017, and June, 2017, to the admissions representatives from the COO promised 1% of the total invoice sale for every course sold. These e-mails conclude with phrases such as "Let's all CA$H in!!!!" and "Let's have a BIG DAY!!!! CA$H IN!!!!" In a June, 2018, sales contest e-mail, an admission representative (whose signature block describes him as a "Veterans Career Advisor") responds to the COO with "Cash Rules Everything About me! Dolla' Dolla Bill Y'all!"

56.    New Horizons produced for admission representatives periodic "run sheets" showing compensation earned through commissions, bonuses, and sales contests. The Excel files typically contain four spreadsheets, one of which identifies all of the GI Bill students and tracks commissions based on payments by the VA.

57.    For example, New Horizons admission representatives B.P. and K.K. worked exclusively on commission and enrolled veterans covered by the GI Bill. The compensation earned by B.P. and K.K. was entirely based on sales and collections, i.e., student enrollment and payment. Together they enrolled hundreds of GI Bill students and earned commissions based on those enrollments.

### b.  New Horizons knew its compensation structure violated the ICB.

58.    Following Executive Order 13607, the SAA contacted New Horizons on June 20, 2012, asking schools to accept the Principles of Excellence, which

prohibited incentive compensation consistent with 34 C.F.R. § 668.14. Both Remington and his COO received this e-mail. The COO stated that New Horizons would accept the principles because "[n]ot signing them is probably viewed negatively by Betsy and the SAA and viewed as rogue."

59.     In 2015, a senior director from New Horizons' franchisor circulated a memorandum highlighting the passage of PL 112-249, which codified the GI Bill's ICB, quoted the language of the ICB, and said this "may drastically impact how your center compensates your staff." The memo echoes a recommendation from VA that New Horizons centers "'take a hard look at their policies, procedures, and practices and make sure their compensation packages are compliant'" and "'look at recruiting & enrollment practices along with financial aid assistance and award determination and ensure it would not violate the statute.'" The memo concludes that "it is evident that this is encouragement for all post-secondary schools not to compensate their staff through incentive compensation packages."

60.     In 2016, the COO sent an e-mail to the franchisor saying "I have seen a lot of centers going to salary only EC compensation plan because of the VA asking and questioning this. Do you think this is a move that all centers need to do?" The same senior director forwarded his memo to the COO and noted that the memo was sent to franchise owners in June, 2015.

61.     Remington followed up with the COO asking, "how do you see we comply with this recommendation?" and proposed an alternative plan with a base salary plus retention, certification, and placement bonuses. Remington concluded by

17

saying "[t]his plan would comply with the letter of the regulations but would be culturally different" but that he was "struggling with the motivational component." Ultimately, Remington decided "[l]et's just stick with the current plan and adjust next year."

62.    In May, 2019, Remington again inquired whether the COO had "given any further thought to how to compensate EC's for VA sales" and said "July 1 is the time to change if we do." No change occurred at that time.

63.    On September 13, 2019, the United States subpoenaed New Horizons' franchisor for documents and information related to GI Bill compliance, including compliance with the ICB.

64.    In January, 2020, Remington decided that he would change the name of commissions, contests, and bonuses to a "student completion percentage" to create an appearance of compliance with the ICB. Remington instructed his controller to change the run sheets by substituting "SCP" for the former terminology. But he said that nothing would change in the calculation of "contest money" and commission-only admission representatives in Tampa would be "put on a $24,000 base salary[,] [w]hich is a draw against their compensation." In other words, the "salary" was really just an advance against future anticipated incentive compensation or commission earnings. Thus, "SCP" was a change in name only.

65.    In another e-mail, the COO acknowledged that New Horizons would still engage in sales contests for admissions representatives enrolling GI Bill students, but "we just don't call it that."

66.     Accordingly, the claims by New Horizons associated with GI Bill students were false because New Horizons certified compliance with Title 38 when, in fact, New Horizons was knowingly violating the ICB.

### E. New Horizons knowingly violated the Last Payer Rule, submitted false claims, and made false statements to the VA.

67.     Each electronic certification of enrollment that New Horizons submitted, or caused to be submitted, through VA-ONCE was a claim for payment from the VA.

68.     VA-ONCE electronic certifications of enrollment incorporated by reference the certifications found on VA Form 22-1999, including that New Horizons had "exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA." This included the Last Payer Rule.

69.     Schools and SCOs have access to publicly available VA guidance through the VA's School Certifying Official Handbook. The handbook cites 38 U.S.C. § 3313, explains the Last Payer Rule, and provides a detailed example of how SCOs should calculate and certify tuition and fees to the VA for a GI Bill veteran who receives a tuition scholarship. The handbook specifically says:[4]

> For periods of enrollment beginning on or after August 1, 2011, you should report the following charges:

---

[4] The current version is available at
https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000149088/School-Certifying-Official-Handbook-On-line.

The actual net cost for in-state tuition and fees assessed by the institution for the program of education after the application of any waiver of, or reduction in, tuition and fees; and any scholarship, or other Federal, State, institutional or employer-based aid or assistance (excluding loans and title IV funds) that is provided directly to the institution and specifically designated for the sole purpose of defraying tuition and fees.

| | |
|---|---|
| Example: Student gross in-state charges | $4,000 |
| Veteran Discount | - 400 |
| Tuition Scholarship | -2,000 |
| Title IV (ex. Pell Grant) * | 2,500 |
| General Scholarship* | 1,000 |
| **Net In-State Charges** | $1,600 |

\* Denotes to exclude calculating net cost

Aid or assistance that is designated for the sole purpose of reducing a student's tuition and fee cost should be deducted from the net in-state charges reported to VA.

In the above example the student also has a $1,000 scholarship from a local Veterans Service Organization. The scholarship is general in nature and may be used to defray school costs such as food, housing, books, etc. Since it's not "specifically designated for the sole purpose of defraying tuition and fees, "it is not deducted from the charges submitted to VA.

70.     At all relevant times, the handbook was available to New Horizons Tampa and New Horizons Orlando, as well as its SCOs, including New Horizons' COO.

71.     New Horizons knew or should have known that the Last Payer Rule required first deducting the scholarship, grant, or tuition waiver provided to a GI Bill student and seeking payment for only the net amount of tuition and fees charged to the individual student.

72.     Yet New Horizons provided "scholarships" designated for the sole purpose of defraying tuition and fees and failed to deduct those amounts before seeking payment from the VA. New Horizons designed these "scholarships" to

eliminate a veteran's out-of-pocket cost. New Horizons employees referred to this as "scholarshipping," meaning that the school would absorb whatever remaining tuition cost was not covered by the VA.

73.    These so-called "scholarships" were tuition waivers based on nothing more than the level of benefits available to a GI Bill student. There were no qualification requirements, application process, or proof of economic hardship.  New Horizons did not discount tuition for fully funded students. But New Horizons systematically waived tuition of any veteran covered at less than a hundred percent. New Horizons waived unpaid tuition both at the time of enrollment and after course completion. New Horizons often certified and enrolled veterans contemporaneous with the veteran applying for Post 9/11 GI Bill Benefits, which meant that the veteran may not have known the veteran's financial responsibility before enrolling. Veterans were willing to do this because New Horizons told them they would have no out-of-pocket cost.

74.    For example, in 2015 the COO sent an e-mail to an admission representative about a GI Bill veteran and said, "This e-mail confirms that we will be issuing a 10% hardship/financial scholarship to [J.C.] because his education benefits from the VA only pay out 90% of tuition. He will incur no additional out of pocket costs and the 90% will cover all of his tuition and study materials/books." The COO copied New Horizons' controller as well as the New Horizons Orlando general manager on this e-mail.

75.    Similarly, in a June, 2017, e-mail, the controller recognized that GI Bill

veteran T.L. "was invoiced at 100%" but was "at the 90% rate" and asked "does this need to be disputed," presumably with the VA. An admission representative responded, "No, he is 90%[.] My note didn't save. [The COO] did approve him to attend and approved a scholarship for the 10% difference."

76.     For nearly every GI Bill veteran who was less than fully funded, New Horizons failed to deduct the tuition waiver that New Horizons provided to those veterans from the amount that New Horizon certified to the VA.

77.     For example, in May, 2020, the controller e-mailed New Horizons Orlando's general manager about GI Bill veteran A.P. who had enrolled in five computer technology courses in 2019 and was entitled to 50 percent tuition assistance based on his length of service. The general manager requested that the controller "please view the balance" for A.P. The controller responded that A.P. "[j]ust needed a scholarship entry." The controller then sent a ledger to the general manager with a back-dated entry for a "VA Hardship Scholarship" of $3,300 on July 9, 2019. This tuition waiver was never reported to the VA.

78.     Furthermore, to satisfy the 85/15 Rule, New Horizons often discounted or completely waived tuition for privately funded students. Considering the discounts provided to privately funded students and less than 100 percent GI Bill students, the actual course price was much less than what New Horizons charged the VA.

79.     The following are specific examples of false claims and certifications at New Horizons:

a. **Orlando – Student R.M.**

80.     New Horizons Orlando student R.M. enrolled in a series of computer technology courses offered by the school in April, 2018.

81.     Based on R.M.'s length of military service, R.M. was eligible to receive GI Bill tuition assistance of 80 percent. New Horizons knew that R.M. was eligible for GI Bill benefits and knew the amount of R.M.'s benefits.

82.     New Horizons' internal ledger shows that New Horizons provided R.M. a "VA Hardship Scholarship" of $2,893.53, which was the difference between the full tuition for R.M.'s courses ($14,967.64) and the 80-percent tuition assistance paid by VA ($12,074.11).

83.     The Last Payer Rule required New Horizons to deduct the tuition waiver from the total amount of tuition certified to the VA for R.M. However, New Horizons certified the full course price to the VA rather than the reduced the price after the tuition waiver.

84.     Specifically, on April 3, 2018, New Horizons submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal money for the following courses for R.M.:

i.   Mobile Device & Desktop Technician - $2,215.00

ii.   Preparatory Program for Security+ - $3,089.00

iii.   Preparatory Program for Project Mgmt. Professional - $2,448.64

iv.   Preparatory Program for CEH - $2,995.00

v.   Preparatory Program for ITIL - $2,185.00

vi.   Cyber Sec. Forensic & Intrusion Analyst - $2,250.00

85.    The SCO who submitted these claims to the VA was New Horizons accountant P.D., who worked in Orlando, Florida.

86.    As a result of P.D.'s claims, the VA paid New Horizons 80 percent of the full course price for R.M. rather than 80 percent of the reduced course price after the tuition waiver.

87.    At no time did New Horizons reveal to the VA that New Horizons had provided R.M. with a tuition waiver for the difference between the total course price and the amount of VA tuition assistance.

88.    As a result, the VA paid New Horizons more for R.M.'s tuition and fees than the VA would have if New Horizons had complied with the Last Payer Rule and deducted the tuition waiver from the amount of fees that New Horizons certified in VA-ONCE.

a.   **Orlando – Student M.R.**

89.    New Horizons Orlando student M.R. enrolled in a series of computer technology courses offered by the school in September, 2018.

90.    Based on M.R.'s length of military service, M.R. was eligible to receive GI Bill tuition assistance of 60 percent. New Horizons knew that M.R. was eligible for GI Bill benefits and knew the amount of M.R.'s benefits.

91.    New Horizons' internal ledger shows that New Horizons provided M.R. a "VA Hardship Scholarship" of $7,428.00, which was the difference between the full tuition for R.M.'s courses ($18,570.00) and the 60-percent tuition assistance

paid by the VA ($11,142.00).

92.     The Last Payer Rule required New Horizons to deduct the tuition

waiver from the total amount of tuition certified to the VA for M.R. However, New

Horizons certified the full course price to the VA rather than the reduced the price

after the tuition waiver.

93.     Specifically, on September 25, 2018, New Horizons submitted, or

caused to be submitted, electronic enrollment certifications to the VA requesting

payment of federal money for the following courses for M.R.:

      i.   Preparatory Program for A+ - $3,945.00

      ii.   Preparatory Program for MTA - $2,500.00

      iii.   Cisco Cyber Security Network Analyst - $2,500.00

94.     On October 29, 2018, and November 5, 2018, New Horizons

submitted, or caused to be submitted, electronic enrollment certifications to the VA

requesting payment of federal money for the following courses for M.R.:

      i.   Cisco Cyber Security Network Analyst - $2,500.00

      ii.   Mobile Device & Desktop Support Technician - $2,125.00

95.     The SCO who submitted these claims to the VA was New Horizons

accountant P.D., who worked in Orlando, Florida.

96.     As a result of P.D.'s claims, the VA paid New Horizons 60 percent of

the full course price for M.R. rather than the reduced the price after the tuition

waiver.

97.     At no time did New Horizons reveal to the VA that New Horizons had

provided M.R. with a tuition waiver for the difference between the total course price and the amount of VA tuition assistance.

98.     As a result, the VA paid New Horizons more for M.R.'s tuition and fees than the VA would have if New Horizons had complied with the Last Payer Rule and deducted the tuition waiver from the amount of fees that New Horizons certified in VA-ONCE.

      a.  **Tampa – Student F.R.**

99.     New Horizons Tampa student F.R. enrolled in a series of computer technology courses at the school in January, 2017.

100.    Based on F.R.'s length of military service, F.R. was eligible to receive GI Bill tuition assistance of 60 percent. New Horizons knew that F.R. was eligible for GI Bill benefits and knew the amount of F.R.'s benefits.

101.    New Horizons' internal ledger shows that New Horizons provided F.R. a "NH Scholarship" of $8,292.00, which was the difference between the full tuition for F.R.'s courses ($20,730.00) and the 60-percent tuition assistance paid by the VA ($12,438.00).

102.    The Last Payer Rule required New Horizons to deduct the tuition waiver from the total amount of tuition certified to the VA for F.R. However, New Horizons certified the full course price to the VA rather than the reduced the price after the tuition waiver.

103.    Specifically, on November 14, 2018, New Horizons submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting

payment of federal money for the following courses for F.R.:

    i.   CEH - $3,945.00

    ii.   CISSP - $3,895.00

    iii.   CCNA SEC - $3,495.00

    iv.   CCNA - $4,945.00

    v.   SEC+ - $2,450.00

    vi.   NET+ - $2,450.00

104. The SCO who submitted these claims to the VA was New Horizons employee M.H., who worked in Tampa, Florida.

105. As a result of M.H.'s claims, the VA paid New Horizons 60 percent of the full course price for F.R. rather than the reduced the price after the tuition waiver.

106. At no time did New Horizons reveal to the VA that New Horizons had provided F.R. with a tuition waiver for the difference between the total course price and the amount of VA tuition assistance.

107. As a result, the VA paid New Horizons more for F.R.'s tuition and fees than the VA would have if New Horizons had complied with the Last Payer Rule and deducted the tuition waiver from the amount of fees that New Horizons certified in VA-ONCE.

a. **Tampa – Student D.P.**

108. New Horizons Tampa student D.P. enrolled in a series of computer technology courses at the school in January, 2020.

109.    Based on D.P.'s length of military service, D.P. was eligible to receive GI Bill tuition assistance of 60 percent. New Horizons knew that D.P. was eligible for GI Bill benefits and knew the amount of D.P.'s benefits.

110.    New Horizons' internal ledger shows that New Horizons provided D.P. a "NH Scholarship" of $2,396.00, which was the difference between the full tuition for D.P.'s courses ($5,990.00) and the 60-percent tuition assistance paid by the VA ($3,594.00).

111.    The Last Payer Rule required New Horizons to deduct the tuition waiver from the total amount of tuition certified to the VA for D.P. However, New Horizons certified the full course price to the VA rather than the reduced the price after the tuition waiver.

112.    Specifically, on January 27, 2020, New Horizons submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal money for the following courses for D.P.:

      i.   COMPTIA Security+ - $2,995.00

      ii.  COMPTIA Network+ - $2,995.00

113.    The SCO who submitted these claims to the VA was New Horizons employee M.H., who worked in Tampa, Florida.

114.    As a result of M.H.'s claims, the VA paid New Horizons 60 percent of the full course price for D.P. rather than the reduced the price after the tuition waiver.

115.    At no time did New Horizons reveal to the VA that New Horizons had

provided D.P. with a tuition waiver for the difference between the total course price and the amount of VA tuition assistance.

116.    As a result, the VA paid New Horizons more for D.P.'s tuition and fees than the VA would have if New Horizons had complied with the Last Payer Rule and deducted the tuition waiver from the amount of fees that New Horizons certified in VA-ONCE.

117.    Altogether, New Horizons overcharged the VA for tuition and fees for hundreds of GI Bill students.

### F.  The defendants' false claims and false statements were material to the VA's decision to pay the claims.

118.    The FCA defines materiality as something having a natural tendency to influence, or the capability of influencing, the payment or receipt of money or property.

119.    The VA would not have paid GI Bill tuition and fees to New Horizons had the VA known that New Horizons (1) falsely inflated the amount of tuition and fees it claimed on the electronic enrollment certifications, (2) falsely claimed compliance with its obligation to exercise reasonable diligence in complying with Title 38, including the Last Payer Rule and the ICB.

120.    The VA and the SAAs perform on-site compliance surveys at schools receiving GI Bill money. As part of a survey, a VA or SAA representative will review a small sample of student files. Afterward, the representative provides written findings to the school.

121.   At all relevant times, New Horizons either concealed or failed to provide VA and SAA representatives information about New Horizons' tuition waivers for GI Bill veterans and incentive compensation for admission representatives. If New Horizons had provided this information, the VA and the SAA would have required corrective action or refused further payment or both.

122.   Since the addition of the ICB to the GI Bill, the VA and SAAs have pursued enforcement action against, and suspended GI Bill payments, to schools that provide unlawful incentive compensation and that violate the Last Payer Rule, including other New Horizons, Inc., franchises.

## COUNT I: FALSE OR FRAUDULENT CLAIMS
### VIOLATION OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)(A)

123.   The United States re-alleges paragraphs 1 through 122.

124.   From at least April 9, 2015, through February 18, 2022, the defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval. Specifically, the defendants submitted electronic enrollment certifications through VA-ONCE in which the defendants (1) falsely inflated the amount of tuition and fees claimed for GI Bill veterans and (2) falsely certified that it had exercised reasonable diligence to comply with the requirements of Title 38, United States Code, when New Horizons had not.

125.   The United States suffered damages as a result of the defendants' false or fraudulent claims.

126.   The defendants are liable to the United States for treble damages under

the FCA, in an amount to be determined at trial, plus a civil penalty of $13,508 to $27,018 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by the defendants.

**COUNT II: FALSE STATEMENTS**
VIOLATION OF THE FALSE CLAIMS ACT
31 U.S.C. § 3729(a)(1)(B)

127.   The United States re-alleges paragraphs 1 through 122.

128.   From at least April 9, 2015, through February 18, 2022, the defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim. Specifically, the defendants submitted or caused the submission of electronic enrollment certifications through VA-ONCE in which the defendants (1) falsely inflated the amount of tuition and fees New Horizons claimed for GI Bill veterans and (2) falsely certified that the defendants had exercised reasonable diligence to comply with the requirements of Title 38, United States Code, when they had not.

129.   The United States suffered damages as a result of the defendants' false records or statements.

130.   The defendants are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by 28 C.F.R. Part 85) for each false claim presented or caused to presented by the defendants.

## COUNT III: PAYMENT UNDER MISTAKE OF FACT

131.    The United States re-alleges paragraphs 1 through 122.

132.    As a consequence of the acts described above, the United States paid money to the defendants from at least April 9, 2015, through February 18, 2022, based on a mistaken belief that the defendants had complied with federal rules and regulations governing GI Bill benefits. The United States paid more money to the defendants than it would have had the United States known that the defendants were not in compliance with the Last Payer Rule and the ICB.

133.    The United States suffered damages as a result of payments to the defendants under a mistake of fact, and the defendants are liable for restitution to the United States for an amount to be determined at trial.

## COUNT IV: UNJUST ENRICHMENT

134.    The United States re-alleges paragraphs 1 through 122.

135.    From at least April 9, 2015, through February 18, 2022, the United States paid GI Bill educational assistance benefits to the defendants in amounts exceeding what the defendants knew or should have known they were actually entitled to receive.

136.    The defendants retained or used monies from the United States for GI Bill educational assistance benefits to which the defendants were not entitled and was therefore unjustly enriched.

137.    By directly or indirectly obtaining federal funds from VA to which they were not entitled, the defendants were unjustly enriched at the expense of the United

States and are liable to account and pay to the United States an amount to be determined at trial.

## PRAYER FOR RELIEF

THEREFORE, the United States respectfully requests a judgment in favor of the United States and against the defendants as follows:

a. On Counts I and II, against the defendants for the amount of the United States' damages, trebled as required by law, and such costs and civil penalties as required by law, together with such further relief as may be just and proper.

b. On Count III for payment under mistake of fact, against the defendants for an amount equal to the money paid by the United States to New Horizons, or on New Horizons' behalf, to which New Horizons was not entitled, plus interest, costs, and expenses.

c. On Count IV for unjust enrichment, against the defendants for the damages sustained and/or amounts by which the defendants retained monies received or benefitted from reimbursements paid by the United States to which the defendants were not entitled, plus interest, costs, and expenses.

Respectfully submitted on this 27th day of February, 2024,

ROGER HANDBERG
United States Attorney

/s/ *Lindsay S. Griffin*
LINDSAY SAXE GRIFFIN
Assistant United States Attorney
Florida Bar No. 72761
MAMIE V. WISE
Florida Bar No. 65570
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone No. (813) 274-6155
Facsimile No. (813) 274-6200
Lindsay.Griffin@usdoj.gov
Mamie.Wise@usdoj.gov